IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| KRIS HAYDEN,<br><br>Plaintiff,<br><br>vs.<br><br>LEXINGTON INSURANCE COMPANY,<br><br>Defendant. | CV-26-52-BU-JTJ<br><br>ORDER |

## I. INTRODUCTION

On April 22, 2026, Plaintiff Kris Hayden (Hayden) filed a complaint for declaratory judgment in the Montana Eighteenth Judicial District Court against Defendant Lexington Insurance Co. (Lexington). (Docs. 1-1 and 4). Lexington removed the case to federal court based upon diversity of citizenship. (Doc. 1).

Hayden seeks an order from this Court directing [Lexington] to comply with their (sic) Unfair Trade Practices Act obligations and investigate [Hayden's] claim. (Doc. 4, ¶¶ 27-36). Lexington insures Hayden's former employer, BPM. Hayden's underlying retaliation termination claim against BPM is pending before the Montana Human Rights Bureau. (Id., ¶ 16). Hayden acknowledges that Mont. Code Ann. § 33-18-242(7)(b) provides that as a third-party claimant she cannot file suit for damages against Lexington

for a violation of the UTPA until her underlying claim against BPM is resolved. (Id., ¶ 30). However, Hayden contends there is no prohibition against seeking a declaration from a court directing Lexington to investigate her retaliation termination claim against BPM in compliance with the UTPA. (Id.). Hayden also seeks to recover attorney fees in an amount not to exceed $74,999.00 for bringing her declaratory judgment action. (Id., ¶¶ 37-40).

Lexington has filed a motion to dismiss Hayden's request for declaratory relief and briefs in support. (Docs. 6, 7, and 23). Lexington contends that the UTPA allows claims by a third-party claimant against an insurer only for actual damages caused by the insurer's violation of certain provisions of the UTPA. (Doc. 7, p. 5). Accordingly, declaratory relief is not available. (Id.). Lexington further argues that even if declaratory relief were available under the UTPA, Hayden's action is premature because the underlying employment termination claim has not been resolved. (Id., p. 8). Lexington further argues that Hayden's Complaint fails to present a justiciable controversy. (Id., pp. 9-13). Hayden opposes the motion. (Doc. 18).

Hayden has filed a Motion to Remand and briefs in support. (Docs. 9, 10, and 24). Lexington opposes this motion. (Doc. 16).

## II. BACKGROUND

Hayden alleges BPM hired her in 2024. (Doc. 4, ¶ 8). Hayden also alleges her position was that of Chief of Staff and that in this position she assisted BPM in responding to complaints to the Montana Human Rights Bureau (HRB) and that she also testified as a witness in HRB investigations. (Id., ¶ 10). Hayden further alleges that in September of

2024 the Montana Human Rights Bureau (HRB) interviewed her in relation to a claim involving termination of another BPM employee (Ivans). (Id., ¶ 11). Hayden alleges BPM's CEO, Ben King, pressured her to testify he was not involved in the decision to terminate Ivans. (Id.) Hayden alleges that when the HRB interviewed her about Ivans, she told the HRB investigator that King was directly involved in the decision to terminate Ivans' employment. (Id.). Hayden alleges that within a few days of her interview with the HRB's investigator, King's behavior towards her changed dramatically. (Id., ¶ 12.). Hayden alleges that in November/December 2024 King alleged Hayden had given herself an unauthorized raise and BPM terminated Hayden. (Id., ¶ 14).

Hayden alleges she filed a retaliation claim with the HRB contending BPM eliminated her position after she engaged in a protected activity. (Id., ¶ 15). The HRB allegedly issued a Final Investigative Report on October 16, 2025, finding retaliation. (Id. at Exhibit A). Hayden's HRB claim is allegedly presently proceeding to a contested case hearing before the HRB's Office of Administrative Hearings. (Id., ¶ 16). The hearing is allegedly scheduled for October 8-9, 2026. (Id. at Exhibit B).

Hayden next alleges she contacted Lexington on March 26, 2026, through its claims submission email, to submit a claim on BPM's behalf under BPM's employment practices coverage with Lexington. (Doc. 4, ¶ 21). On March 27, 2026, Lexington allegedly replied that materials must be submitted directly to it by its insured (BPM) and advised it would not accept Hayden's submission. (Id.). On March 30, 2026, Hayden allegedly sent a demand letter and discovery/motions to BPM, with copies to Lexington. (Id., ¶ 22). The

letter allegedly included a discussion of Lexington's obligations under the UTPA and set an April 17, 2026, deadline for Lexington to respond. (Id.). Hayden alleges Lexington never acknowledged receiving the demand package and refused to investigate. (Id., ¶¶ 23-24).

## III. LEGAL STANDARDS

### A. Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is proper under Rule 12(b)(6) when the complaint "either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013). To withstand a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At the motion to dismiss stage, the Court "take[s] all well-pleaded factual allegations in the complaint as true, construing them in the light most favorable to the nonmoving party." *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018). However, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *National Association for the Advancement of Psychoanalysis v. California Board of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000). Additionally, "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18

F.3d 752, 754–55 (9th Cir. 1994).

On a motion to dismiss, a court may consider "documents [that] have been incorporated into the complaint by reference or are matters of which a court may take judicial notice." *Orellana v. Mayorkas*, 6 F.4th 1034, 1042-43 (9th Cir. 2021). A court may assume an incorporated document's contents are true for purposes a motion to dismiss under Rule 12(b)(6). *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 1002 (9th Cir. 2018). When jurisdiction is based upon diversity of citizenship, the court applies the substantive law of the forum state. *Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.,* 306 F.3d 806, 812 (9th Cir. 2009).

**B. Motion to Remand**

28 U.S.C. § 1332(a) grants federal courts with original jurisdiction in "all civil actions where the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between (1) citizens of different States." Federal courts are courts of limited jurisdiction. *Kokkoven v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). If a court determines at any time that it lacks subject matter jurisdiction, the Court must dismiss the action. Fed. R. Civ. P. 12(h)(3).

## IV. DISCUSSION

**A. Hayden's Motion to Remand**

Hayden contends that this case should be remanded to state court because the amount in controversy does not exceed the $75,000.00 jurisdictional amount required under 28 U.S.C. § 1332. (Doc. 10, pp. 4-6). Hayden concedes that the Ninth Circuit has found that

it is proper to gauge the value of the declaratory judgment action by the value of the underlying tort. (Id., p. 7, citing *Budget Rent-A Car, Inc. v. Higashiguchi*, 109 F.3d 1471, 1473 (9th Cir. 1997). However, Hayden contends that *Higashiguchi* is not analogous to this case because unlike *Higashiguchi* this matter does not involve coverage issues. (Id.). Hayden argues that absent any coverage issues, if she prevails in the Underlying Action, BPM will have to pay the value of the underlying tort regardless of whether Hayden wins or loses this case. (Id.). Hayden, therefore, contends that "the maximum pecuniary effect this litigation is the financial impact of having to pay the claim now rather than in mid-October after a judge has determined the value of the underlying claim." (Id., p. 8). Hayden calculates that amount by multiplying the values of the claim at $300,000.00 by the interest per day (Montana's statutory interest rate of 9.75%/100) and then multiplying the days between now and judgment (119 days from time motion filed to time of expected HRB contested case decision). (Id.). Utilizing this formula, Hayden contends the amount in controversy is $9,536.30. (Id.). Hayden contends that even if the contested case hearing occurred over a full year, the pecuniary impact would only be $29,250. (Id.).

Lexington argues that "[f]or declaratory judgement actions, 'it is well established that the amount in controversy is measured by the value of the object of the litigation.'" (Doc. 16, p. 4-5). Lexington further contends that even in cases involving insurance issues that do not concern coverage, the basis for the amount in controversy is the value of the underlying claim. (Id., pp. 5-6). Hayden made a demand to Lexington of at least $350,000.00 for the underlying claim and is demanding more than $500,000.00 in the

contested case hearing. (Doc. 16, pp. 6, 8; Doc. 1, ¶ 4). As such, Lexington argues that it has established that the amount in controversy exceeds $75,000.00. (Id. p. 9).

Lexington further argues that Hayden's Complaint alleges that Lexington's refusal to investigate "puts Plaintiff at risk of an insufficient policy limit to compensate Plaintiff because defense attorney fees are taken out of the policy limit" and "[t]he more BPM"S attorneys bill on this file, the less insurance coverage there will be to compensate Plaintiff. (Doc. 16, p. 7, citing ¶ 35 of Hayden's Complaint). Therefore, Lexington contends that Hayden admits that the objective of the litigation is to preserve the $1,000,000.00 policy limits. (Id.). Because the $1,000,000 policy limit of liability far exceeds the amount in controversy, the Court has diversity jurisdiction. (Id.).

The Court agrees with Lexington. Hayden's Complaint requests relief based upon Lexington's failure to conduct any investigation at all into her claim, which in turn is cannibalizing Lexington's policy limits. The amount in controversy, therefore, is at most the $1,000,000.00 limit of liability or at least between the $350,000.00 settlement offer and the $500,000.00 contested case hearing prayer for relief. Hayden's contrary calculation of the amount in controversy is speculative and unsupported by the law. Her conclusory allegations as to the amount in controversy fail to justify remand. *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 774 (9th Cir. 2017).

**B. The UTPA precludes Hayden's Declaratory Judgment claim**

Lexington contends that Hayden's Complaint fails to state a claim upon which relief can be granted because the plain language of the UTPA (Mont. Code Ann. § 33-18-242 (1)

and (4)) precludes declaratory relief as an available cause of action, as it only allows third-party claimants to seek recovery of actual damages for violation of certain provisions of Mont. Code Ann. § 33-18-201. (Doc. 23, pp. 10-11). Lexington further argues that even if declaratory relief is available, Mont. Code Ann. §33-18-342(7)(b) precludes Hayden's claim for declaratory relief because her underlying HRB claim is ongoing rather than being settled or judgment being entered in her favor. (Id.).

Hayden argues that her Complaint does not involve an allegation that Lexington failed to conduct a reasonable investigation but involves Lexington's refusal to conduct any investigation at all. Hayden contends that Lexington's position pre-litigation was "we're not investigating this unless our insured directs us to do so." (Doc. 18, p. 10). According to Hayden, the controlling issue is whether an insurer is allowed to take that position given its UTPA obligations. (Id.).

Hayden relies upon *Safeco Ins. Co. v. Montana Eighth Jud. Dist. Ct.*, 2 P.3d 834 (Mont. 2000), in support of her argument that the Montana Supreme Court allows declaratory judgment actions to proceed prior to a third-party claimant's underlying claim being resolved. (Doc. 18, pp. 9-18 ). Hayden contends that Montana Supreme Court decisions, not federal court decisions that Lexington relies upon, govern whether insurers are disregarding their obligations under the UTPA. (Id., pp. 18-19).

In *Safeco*, a passenger injured in an accident involving a driver Safeco insured under an automobile liability insurance policy sought a declaration stating Safeco was obligated to pay his undisputed medical expenses. *Safeco* at 834. Safeco's insured admitted her

negligence caused the accident. *Id*. at 835. The *Safeco* court upheld the district court's determination that Safeco must advance pay the portion of undisputed medical expenses incurred as a result of the accident to the third-party claimant. *Id*. In making its determination, the *Safeco* court reiterated Montana's general rule prohibiting direct suits against insurers and dealt with the narrow issue of "[w]hether Safeco, as a matter of law, must pay for [the] undisputed portion, and only that portion, in advance of settlement or judgment ..." *Id*. at 838.

The circumstances of this case differ significantly from *Safeco*. Initially, the *Safeco* court made clear that its judgment, in conformity with *Ridley v. Guaranty Nat'l Ins. Co.,* 951 P. 2d 987 (Mont. 1997), was narrowly tailored to cover only the medical expenses that a third-party claimant is unequivocally entitled to, prior to settlement or entry of judgment, because both the tortfeasor's liability was reasonably clear as was the causal connection between the tortfeasor's liability and the medical expense in question. *Safeco*. at 839.

In this case, Hayden is seeking a declaration that Lexington failed to investigate a claim that is still being litigated before the HRB. The unique circumstances present in *Safeco* are not present in this action. Unlike the insured in *Safeco* who admitted liability for the motor vehicle collision, BPM has not admitted liability for its alleged retaliatory termination of Hayden's employment. Furthermore, unlike the claimant in *Safeco*, Hayden is not seeking advance payment of medical expenses or any other damage BPM allegedly caused through its retaliatory termination Hayden's employment. Rather, Hayden is seeking a declaration ordering Lexington to investigate her underlying retaliatory

employment termination claim. Thus, Hayden's reliance *Safeco* is misplaced.

Hayden has not provided any authority for applying the narrow exception *Safeco* created to an action *not* involving advance payment of medical expenses where the insured has *not* admitted liability. Rather, the plain language of Mont. Code Ann. §§ 33-18-242(1), (4), and (7)(b) provide Hayden with clear and limited options in the event Lexington violates Mont. Code Ann. § 33-18-201(4) by refusing "to pay claims without conducting a reasonable investigation based on all available information." *Woodman v. Standard Insurance Company,* 2021 WL 927373, *2 (D. Mont. Mar. 11, 2021). Hayden, a third-party claimant, has an independent action against Lexington for actual damages caused by Lexington's alleged violation of Mont. Code Ann. § 33-18-201(4), but not under any other theory or cause of action. Mont. Code Ann. §§ 33-18-242(1) and (4). Hayden may file such an action but she can do so only after her "claim has been settled or a judgment entered in favor of [her] on the underlying claim." Mont. Code Ann. § 33-18-242(7).

## V. CONCLUSION

Based upon the foregoing, IT IS HEREBY ORDERED:

1. Hayden's Motion to Remand (Doc. 9) is DENIED.
2. Lexington's Motion to Dismiss (Doc. 6) is GRANTED.
3. The Clerk is directed to close this case.

DATED this 5th day of October 2026.

John Johnston
United States Magistrate Judge